# In the United States Court of Federal Claims

BID PROTEST
No. 19-473C
Filed Under Seal:  July 11, 2019
Reissued For Publication:  August 12, 2019[*]

|  |  |  |
|---|---|---|
| _____ | ) | |
| SECOND STREET HOLDINGS, LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Pre-Award Bid Protest; Judgment Upon the Administrative Record; RCFC 52.1; |
| v. | ) ) | Motion To Supplement The Administrative Record. |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

*Seamus Curley*, Counsel of Record, *Chelsea L. Goulet*, Of Counsel, Stroock & Stroock & Lavan LLP, Washington, DC, for plaintiffs.

*Ann C. Motto*, Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, United States Department of Justice; *Adetokunbo Falade*, Assistant Regional Counsel, United States General Services Administration, Washington, DC, for defendant.

## **MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

## I.      INTRODUCTION

Plaintiffs, Second Street Holdings, LLC, 600 Second Street Holdings, LLC, and Seven Hundred 2nd Street Holdings, LLC, brought this pre-award bid protest matter challenging the

---

[*] This Memorandum Opinion and Order was originally filed under seal on July 11, 2019 (docket entry no. 38).  The parties were given an opportunity to advise the Court on their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order.  The parties filed a joint status report on August 12, 2019 (docket entry no. 40) stating their respective views on certain proposed redactions.  And so, the Court is reissuing its Memorandum Opinion and Order, dated July 11, 2019, with the adopted redactions indicated by three consecutive asterisks within brackets ([***]).

purchase option provision contained in a Request for Lease Proposals to provide office space for the new headquarters of the Securities and Exchange Commission (the "SEC").

The parties have filed cross-motions for judgment upon the administrative record upon the issues of whether the purchase option is arbitrary, capricious, and contrary to law, or unduly restrictive on competition, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  *See generally* Pl. Mot.; Def. Mot.  In addition, plaintiffs have moved to supplement the administrative record with the Declaration of Collins Ege.  *See generally* Pl. Mot. to Supp.

For the reasons discussed below, the Court:  (1) **DENIES** plaintiffs' motion to supplement the administrative record; (2) **DENIES** plaintiffs' motion for judgment upon the administrative record; (3) **GRANTS** the government's cross-motion for judgment upon the administrative record; and (4) **DISMISSES** the complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

Plaintiffs own three buildings located at 100 F Street; 600 Second Street; and 700 Second Street in Northeast Washington, DC that are currently leased by the SEC to house the agency's headquarters.  AR Tab 3 at 31.  The leases for these buildings will expire on September 30, 2023.  Def. Mot. at 3.  Plaintiffs have submitted a proposal in response to Request for Lease Proposals No. 5DC0392 (the "RLP") issued by the General Services Administration ("GSA") to provide office space for the new headquarters of the SEC.  *See generally* AR Tab 56.

Plaintiffs challenge the terms of the purchase option contained in Section 7.03 of the RLP upon six grounds, namely, that:  (1) Section 7.03 is facially arbitrary and capricious; (2) Section 7.03 is unduly restrictive of competition; (3) Section 7.03 arbitrarily and capriciously interferes with third-party leasing activities; (4) Section 7.03's assignability right arbitrarily and capriciously adversely affects the value of the property, divests the landlord of such value, and

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the corrected administrative record ("AR"); plaintiffs' complaint ("Compl."); plaintiffs' motion for judgment upon the administrative record ("Pl. Mot."); and the government's response and opposition to plaintiff's motion for judgment upon the administrative record and cross-motion for judgment upon the administrative record ("Def. Mot.").  Except where otherwise noted, all facts recited herein are undisputed.

creates a windfall for the government and an unknown third party; (5) GSA's application of the American National Standards Institute/Building Owners and Management Association Office Area square footage ("ABOA SF")[2] definition to the purchase option is arbitrary and capricious; and (6) Section 7.03 violates procurement law by rendering GSA incapable of complying with General Services Acquisition Regulation ("GSAR") § 570.306(b). *See* Pl. Mot. at 12-35. And so, plaintiffs request that the Court, among other things, declare Section 7.03 arbitrary, capricious, and contrary to law and enjoin GSA from awarding the lease for the new SEC headquarters unless GSA deletes or revises this purchase option provision. *Id.* at 39-40.

## 1. The Request For Lease Proposals

As background, GSA submitted Prospectus No. PDC-11-WA17 to its congressional oversight committees seeking approval to lease space for the new SEC headquarters on December 20, 2016. AR Tab 3 at 31-33. Thereafter, the appropriate United States Senate and House of Representatives committees passed resolutions approving the prospectus on November 29, 2017, and April 12, 2018. AR Tab 4 at 34-35; AR Tab 10 at 52-53. Notably, the House Committee on Transportation and Infrastructure approved the prospectus "[*p*]*rovided that*, to the maximum extent practicable, the Administrator [of GSA] shall include in the lease contract(s) a purchase option that can be exercised at the conclusion of the firm term of the lease." AR Tab 10 at 52 (italics original).

On July 10, 2018, GSA issued RLP No. 5DC0392 seeking up to 1,274,000 rentable square feet of office and related space located within the city of Washington, DC. AR Tab 48 at 490, 493-94. The RLP provides that the initial lease term will be for 15 years firm (the "Initial Lease Term"), with one renewal option for a ten-year firm term (the "Renewal Option Term). *Id.* at 494 (providing Section 1.02(F) of the RLP).

The RLP provides that an offeror is required to submit with its offer:

a freely assignable option for the Government to purchase the offered building(s) effective upon the expiration of the lease term and any renewal options thereof, as outlined in Paragraph 7.03 of the Lease. This purchase option will comprise a part of the price evaluation for the leasehold interest of this solicitation as described in Paragraph 4.09 – Present Value Price Evaluation of this RLP. Further, with regards

---

[2] ABOA SF refers only to the square footage that the government intends to occupy during the lease. *See* AR Tab 37 at 410 n.11.

to the Lease Renewal and Purchase Option provisions, Offerors are notified that the Government will not pay in the rental for the Initial Lease Term or Renewal Lease Term thereof, any opportunity costs imputable to such options. (i.e. the Government's rental during the initial term is expected to provide an overall rate of return on capital invested, consistent with current markets for debt and equities and the firm term lease commitment of the Government.) The Government's rental during the required term shall not compensate for any property appreciation which fails to accrue to an owner as a consequence of the Purchase Option provision.

*Id.* at 510 (providing Section 3.06(GG) of the RLP).  Section 7.03 of the draft lease attached to

the RLP, entitled "Government Purchase Option," also provides that:

[t]he Government shall have, at no additional cost, the freely and fully assignable option to purchase the Property (including the land, building, and the improvements thereon), at the expiration of the initial Lease Term and at the expiration of the Renewal Term for the following purchase price:

*Id.* at 563 (emphasis removed).  The draft lease also contains blanks where the offeror is to

provide the proposed purchase prices for the purchase option after the Initial Lease Term and the

Renewal Option Term.  *Id.*

In addition, Section 7.03 requires that the landlord cancel any non-government leases

associated with the property when the property is transferred to the government or its assignee

pursuant to the purchase option.  *Id.* at 564.  Specifically, Section 7.03 provides that non-

government leases "should be cancelable as of the date of transfer," and that any contract

services "shall be cancelable as of the date of transfer."  *Id.*  This provision also provides that

"[i]n the event that any leases terminate after transfer, the Government reserves the right to

negotiate an adjustment to the purchase price based on remaining terms, including any renewal

periods of the leases."  *Id.*

The RLP also addresses how GSA will evaluate the proposed price for the lease.  *Id.* at

513 (providing Section 4.09 of the RLP).  In this regard, Section 4.09 of the RLP provides that

all offers will be evaluated using the net present value price evaluation formula.  *See id.*; *see also*

Def. Mot. at 5.  Section 4.09(C)(7)(h) of the RLP further explains that the purchase options will

be included in the price evaluation process and provides that:

[b]oth purchase options will be evaluated, only for ABOA SF leased by the Government, at 50% of its offered price, in the year of purchase (presumed to be the year following the end of each respective lease term), discounted annually at

> 5%.  For example, the offered purchase price of $100,000,000 for the Initial Term will be evaluated as $50,000,000, at year 16, discounted annually at 5%, and the offered purchase price of $150,000,000 for the Renewal Option term will be evaluated as $75,000,000, at year 26, discounted annually at 5%.  In instances where GSA does not lease all of the space in the Building the purchase option price will be adjusted to reflect only the portion/percentage of the price applicable to the Government's leased premises.

*Id.* at 514.  And so, if the leased property is larger than the space required for the government's use, the RLP provides that the purchase option will only be included in the evaluated price based upon the ABAO SF actually occupied by the government.  *Id.*

Lastly, Section 4.03(A) of the RLP sets forth the criteria for awarding the lease and provides that the lease will be awarded to the offeror "whose offer conforms to the requirements of this RLP and the lease documents and is the lowest-priced technically-acceptable offer submitted."  *Id.* at 512.

### 2.    Plaintiffs' Offer And Protests

On August 31, 2018, plaintiffs filed an agency-level protest challenging the purchase option provision contained in the RLP.  AR Tab 26 at 171.  Thereafter, on September 4, 2018, plaintiffs and their managing agency, Property Group Partners, submitted an initial proposal in response to the RLP.  AR Tabs 49-50.  On October 4, 2018, GSA's contracting officer issued a final decision denying plaintiffs' protest.  *See generally* AR Tab 27.

On October 12, 2018, plaintiffs filed a protest before the United States Government Accountability Office ("GAO") challenging the purchase option provision contained in the RLP.  Def. Mot. at 10; *see generally* AR Tab 28.  GAO issued a public decision denying plaintiffs' protest on January 17, 2019.  *See generally* AR Tab 37.

After GAO denied their protest, plaintiffs and their managing agency submitted a revised proposal in response to the RLP on January 25, 2019.  *See generally* AR Tabs 55-57.[3]  Plaintiffs commenced this action on April 1, 2019.  *See generally* Compl.  To date, GSA has not awarded the lease pursuant to the RLP.  *See* Oral Arg. Tr. at 9:20-10:2.

---

[3] On December 20, 2018, GSA amended the RLP and issued an agency deficiency letter to plaintiffs regarding their initial proposal.  *See generally* AR Tabs 53-54.

**B.      Procedural History**

On April 1, 2019, plaintiffs filed the complaint.  *See generally* Compl.  On April 2, 2019, the Court entered a Protective Order in this matter.  *See generally* Protective Order.

On April 12, 2019, the government filed the administrative record.  *See generally* Initial AR.  On May 3, 2019, plaintiffs filed a motion for judgment upon the administrative record and a motion to supplement the administrative record.  *See generally* Pl. Mot.; Pl. Mot. to Supp.

On May 16, 2019, the government filed a corrected administrative record.  *See generally* AR.  On May 17, 2019, the government filed a response and opposition to plaintiffs' motion for judgment upon the administrative record; a cross-motion for judgment upon the administrative record; and a response and opposition to plaintiffs' motion to supplement the administrative record.  *See generally* Def. Mot.; Def. Resp. to Mot. to Supp.

On May 24, 2019, plaintiffs filed a response and opposition to the government's cross-motion for judgment upon the administrative record and replies in support of their motion for judgment upon the administrative record and motion to supplement the administrative record.  *See generally* Pl. Resp.; Pl. Reply to Mot. to Supp.  Lastly, on May 31, 2019, the government filed a reply in support of its cross-motion for judgment upon the administrative record.  *See generally* Def. Reply.  On June 26, 2019, the Court held oral argument on the parties' motions.  *See generally* Oral Arg. Tr.

These matters having been fully briefed, the Court resolves the pending motions.

**III.   LEGAL STANDARDS**

**A.      Bid Protest Jurisdiction**

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  In bid protest cases, this Court reviews agency actions under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the APA).  Under this standard, an "'award may be set aside if either (1) the procurement official's decision lacked a rational

basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"
*Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting
*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir.
2001)).

In this regard, the United States Court of Appeals for the Federal Circuit has explained
that, "[w]hen a challenge is brought on the first ground, the test is 'whether the contracting
agency provided a coherent and reasonable explanation of its exercise of discretion, and the
disappointed bidder bears a "heavy burden" of showing that the award decision had no rational
basis.'" *Id.* (quoting *Impresa*, 238 F.3d at 1332-33). "'When a challenge is brought on the
second ground, the disappointed bidder must show a clear and prejudicial violation of applicable
statutes or regulations.'" *Id.* (quoting *Impresa*, 238 F.3d at 1333). In addition, when reviewing
an agency's procurement decision, the Court should recognize that the agency's decision is
entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401
U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).
"The [C]ourt should not substitute its judgment for that of a procuring agency . . . ." *Cincom
Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "[t]he protestor must show, by a
preponderance of the evidence, that the agency's actions were either without a reasonable basis
or in violation of applicable procurement law." *Info. Tech. & Applications Corp. v. United
States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v.
United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000); *see also CHE Consulting, Inc. v. United
States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (quoting *Advanced Data Concepts, Inc.*, 216 F.3d at
1058); *Weeks Marine, Inc. v. United States*, 575 F. 3d 1352, 1368-69 (Fed. Cir. 2009). In this
regard, contracting officers "are entitled to exercise discretion upon a broad range of issues
confronting them in the procurement process." *Impresa*, 238 F.3d at 1332; *see also Savantage
Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010). As long as there is "'a
reasonable basis for the agency's action, the court should stay its hand even though it might, as
an original proposition, have reached a different conclusion.'" *Honeywell, Inc. v. United States*,
870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289,
1301 (D.C. Cir. 1971)). But, if "the agency 'entirely fail[s] to consider an important aspect of
the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before

the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)).

### B.      Supplementing The Administrative Record

The Federal Circuit held in *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009), that the "parties' ability to supplement the administrative record is limited" and that the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379-81; *see also Caddell Constr. Co. v. United States*, 111 Fed. Cl. 49, 93 (2013). The Federal Circuit also recognized that the Supreme Court held in *Camp v. Pitts* that "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

This focus is maintained to prevent courts from using new evidence to "convert the arbitrary and capricious standard into effectively de novo review." *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 671 (2009) (internal quotation marks omitted); *see also Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000). And so, this Court has interpreted the Federal Circuit's directive in *Axiom*, within the context of bid protest matters, to mean that supplementation of the administrative record is permitted to correct mistakes and fill gaps, but is not permitted when the documents proffered are unnecessary for an effective review of the government's decision. *L-3 Commc'ns EOTech, Inc.*, 87 Fed. Cl. at 672.

### C.      Judgment Upon The Administrative Record

Unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment upon the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242-43 (2011); *see* RCFC 56. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).

**D.      The Competition In Contracting Act**

The Competition in Contracting Act ("CICA") generally requires procuring agencies to engage in full and open competition. 41 U.S.C. § 3301(a). In this regard, CICA demands that agencies "create specifications that solicit proposals 'in a manner designed to achieve full and open competition.'" *CW Gov't Travel, Inc. v. United States*, 99 Fed. Cl. 666 (2011) (citing 41 U.S.C. § 3306(a)(1)(A)-(C)); *see also Am. Safety Council v. United States*, 122 Fed. Cl. 426, 435-36 (2015). In furtherance of this policy, government agencies may include restrictive requirements in a solicitation only to the extent these restrictions are necessary to satisfy the agency's legitimate needs. *See* 41 U.S.C. § 3306(a)(2)(B); *see also Am. Safety Council*, 122 Fed. Cl. at 436. And so, the question for the Court becomes whether the restrictions are required to meet the government's minimum needs. *Savantage Fin. Servs., Inc.*, 595 F.3d at 1286 ("[C]ompetitors do not dictate an agency's minimum needs, the agency does . . . .")

This Court has recognized that "determining an agency's minimum needs is a matter within the broad discretion of agency officials . . . and is not for [the] court to second guess.". *Am. Safety Council*, 122 Fed. Cl. at 435 (internal citations and quotations omitted). When the Court finds a solicitation's terms to be unduly restrictive, and to serve no legitimate agency need, the Court will find the agency's decision to include those terms in the solicitation to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.*; *see also Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220, 230-31 (1997).

**E.      Injunctive Relief And RCFC 65**

Lastly, under its bid protest jurisdiction, the Court "may award any relief that [it] considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987)) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the

plaintiff must show a likelihood of success on the merits rather than actual success."); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).

> In this regard the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive.  If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others.  If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citation omitted).

This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief."  *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)).  While success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief.  *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) (("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).  On the other hand, a plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for injunctive relief.  *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief).

## IV.   LEGAL ANALYSIS

The parties have filed cross-motions for judgment upon the administrative record on the issues of whether the purchase option in Section 7.03 of the RLP is arbitrary, capricious, or contrary to law, or unduly restrictive on competition, pursuant to RCFC 52.1.  *See generally* Pl. Mot.; Def. Mot.

In their motion for judgment upon the administrative record, plaintiffs argue that GSA has acted arbitrarily and capriciously, abused its discretion, and violated procurement law by including the purchase option in the RLP because:  (1) Section 7.03 is facially arbitrary and capricious; (2) Section 7.03 is unduly restrictive of competition; (3) Section 7.03 arbitrarily and capriciously interferes with third-party leasing activities; (4) Section 7.03's assignability right

arbitrarily and capriciously adversely affects the value of the property, divests the landlord of such value, and creates a windfall for the government and an unknown third party; (5) GSA's application of its irrational ABOA SF definition to the purchase option is arbitrary and capricious; and (6) Section 7.03 violates procurement law by rendering GSA incapable of complying with GSAR § 570.306(b).  Pl. Mot. at 12-35.  And so, plaintiffs request that the Court, among other things, enjoin GSA from awarding the lease for the SEC's new headquarters unless Section 7.03 is deleted from the RLP or substantially revised.  *Id.* at 39-40; *see also* Oral Arg. Tr. at 59:23-60:16.

The government counters in its cross-motion for judgment upon the administrative record that GSA has appropriately included Section 7.03 in the RLP, because the purchase option requirement is reasonable and will ensure that the lease for the SEC's new headquarters meets the government's legitimate housing needs.  Def. Mot. at 16-38.  And so, the government requests that the Court sustain GSA's decision to include Section 7.03 in the RLP.  *See id.* at 38-39.

Lastly, plaintiffs have moved to supplement the administrative record with the Declaration of Collins Ege.  *See generally* Pl. Mot. to Supp.  The government opposes plaintiffs' motion to supplement upon the ground that consideration of the declaration is not necessary to permit meaningful judicial review of this dispute.  *See generally* Def. Resp. to Mot. to Supp.

For the reasons set forth below, plaintiffs have not shown that it is necessary to supplement the administrative record with the Declaration of Collins Ege.  Plaintiffs also have not shown that the purchase option provision contained in Section 7.03 of the RLP is unreasonable, unduly restrictive of competition, or contrary to law.  Rather, the government has demonstrated that GSA has a rational basis for including this requirement in the RLP.  And so, the Court:  (1) **DENIES** plaintiffs' motion to supplement the administrative record; (2) **DENIES** plaintiffs' motion for judgment upon the administrative record; (3) **GRANTS** the government's cross-motion for judgment upon the administrative record; and (4) **DISMISSES** the complaint.

## A.      Supplementation Of The Administrative Record Is Not Warranted

As a preliminary matter, the Court must deny plaintiffs' request to supplement the administrative record with the Declaration of Collins Ege.  It is well-established that the "focal point" of the Court's review of GSA's decision to include Section 7.03 in the RLP "should be the

administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). And so, the administrative record should only be supplemented in this case to correct mistakes and fill gaps, "if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379-81 (Fed. Cir. 2009).

Plaintiffs argue that supplementing the administrative record with the Ege Declaration is necessary, because this case involves "industry-specific information and arguments that are unique to commercial real estate and GSA leasing." Pl. Mot. to Supp. at 4. In this regard, Mr. Ege states in his declaration that he "opines on commercial real estate and GSA lease-specific points related to the [c]omplaint." Ege Decl. at ¶ 7. But, the Court is not tasked with resolving whether the terms of the RLP comport with commercial real estate industry standards in this case. Rather, the Court's duty is to determine whether Section 7.03 of the RLP has a rational basis to the government's needs and whether this provision violates federal procurement law. *See, e.g.*, *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004); *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989).

Given this, consideration of the Ege Declaration is not necessary to ensure meaningful judicial review in this dispute. And so, the Court **DENIES** plaintiffs' motion to supplement the administrative record.

**B.      The Administrative Record Shows That Section 7.03 Is Reasonable**

A careful review of the administrative record shows that the RLP's purchase option requirement is rationally related to meeting GSA's legitimate long-term housing needs. And so, the Court must also **DENY** plaintiffs' motion for judgment upon the administrative record and **GRANT** the government's cross-motion for judgment upon the administrative record.

**1.      Section 7.03 Is Not Facially Arbitrary And Capricious**

First, plaintiffs' claim that Section 7.03 is facially arbitrary and capricious lacks merit because the government has articulated a rational basis for including a firm fixed-price purchase option in the RLP.

### a.   The Firm Fixed-Price Nature Of
### Section 7.03 Is Not Arbitrary And Capricious

Section 7.03 provides, in relevant part, that "[t]he Government shall have, at no additional cost, the freely and fully assignable option to purchase the Property . . . at the expiration of the initial Lease Term and at the expiration of the Renewal Term."  AR Tab 48 at 563 (emphasis removed).  And so, the RLP requires that offerors provide firm fixed-price purchase option pricing for the purchase of their property after 15 and 25 years.  *Id.*

Plaintiffs argue that the firm fixed-price nature of this purchase option is unreasonable, because:  (1) commercial real estate pricing cannot be forecasted 15-25 years into the future and (2) there is no meaningful documentation regarding why GSA needs a firm fixed-price purchase option in the administrative record.  Pl. Mot. at 14.  The record evidence shows, however, that the firm fixed-price nature of the purchase options is rationally related to meeting the government's legitimate needs to purchase the SEC's new headquarters if funding becomes available in the future and that GSA has adequately documented this need in the administrative record.  *See* AR Tab 1 at 2; AR Tab 2 at 26-28; AR Tab 10 at 52.

With regard to the government's legitimate needs, the government explains that there are benefits to owning rather than continuing to lease the SEC's new headquarters.  Def. Mot. at 16.  The government also explains that having a firm fixed-price to purchase the SEC headquarters in advance will permit GSA to plan its budget requests to eventually purchase the property over multiple fiscal years.  *Id.* at 16-17.

The government needs that are addressed by the RLP's purchase option requirement are also well documented in the administrative record.  For example, the administrative record shows that GAO has recognized the advantages to the government of owning rather than leasing property.  AR Tab 1 at 2; AR Tab 2 at 28.  The record evidence also shows that GSA has sought to include purchase options in other lease agreements.  AR Tab 1 at 2; AR Tab 2 at 26-27.

In addition, the administrative record shows that the United States House of Representatives specifically instructed GSA "to the maximum extent practicable," to include "a purchase option that can be exercised at the conclusion of the firm term of the lease" in the RLP for the SEC's new headquarters.  AR Tab 10 at 52.  Given this evidence, the Court finds no basis for setting aside the RLP's purchase option provision because of its firm fixed-price nature.

**b.      Section 7.03 Does Not Require
Offerors To Predict Fair Market Value**

Plaintiffs' claim that the RLP's purchase option requirement is unreasonable because it
requires that offerors predict the fair market value of their property in the future also lacks
evidentiary support.  *See* Pl. Mot. at 14-18.  A careful reading of the RLP's purchase option
requirement makes clear that the purchase option seeks the price that the property owner is
willing to sell the property for at the conclusion of the lease, or any renewal period, not the future
fair market value of the property.  *See* AR Tab 48 at 563.

In this regard, the government explains that the purchase option price is essentially the
amount of the return on the property owner's investment at the conclusion of the lease term.
Def. Mot. at 19.  While plaintiffs correctly observe that there may be risks to an offeror in setting
the purchase price for a property several years into the future, plaintiffs point to no requirement
that GSA eliminate such risks in this case.  Pl. Mot. at 14-18; *see FirstLine Transp. Sec., Inc. v.
United States*, 107 Fed. Cl. 189, 208 (2012) (("The 'mere presence' of risk in a solicitation does
not render it inappropriate or improper.") (internal citation omitted)).  And so, again, the Court
finds no basis for setting aside the RLP's purchase option requirement.

**c.      GSA Did Not Irrationally Include Section 7.03
In The Evaluation Criteria For Net Present Value**

The administrative record also shows that GSA reasonably included the pricing for the
RLP's purchase option in the evaluation criteria for total price in connection with this
procurement.

Section 3.06(GG) of the RLP provides that "[the] purchase option will comprise a part of
the price evaluation for the leasehold interest of this solicitation."  AR Tab 48 at 510 (providing
Section 3.06(GG) of the RLP).  Section 4.09 of the RLP also provides that "[e]valuation of
offered prices will be based on the annual price per ABOA SF, including all option periods."  *Id.*
at 513.

Plaintiffs argue that the requirement in the RLP to include the purchase option pricing in
the evaluation of price under the terms of the RLP "highly prejudices" them, because doing so
disadvantages the owners of high value properties.  Pl. Mot. at 18-19.  But, the administrative
record shows that GSA reasonably decided to include the purchase option pricing in the

evaluation of total price under the RLP to ensure that GSA received reasonable offers.  AR Tab 1 at 14; AR Tab 2 at 25.

In this regard, the administrative record shows that GSA was aware that the RLP's methodology for evaluating price could adversely impact higher valued properties and that the agency took steps to minimize this impact.  AR Tab 48 at 514; *see* AR Tabs 46-47 (discussing evaluation methodology alternatives).  Notably, the RLP provides that the "purchase options will be evaluated, only for ABOA SF leased by the Government, at 50% of its offered price . . . discounted annually at 5%."  AR Tab 48 at 514.  And so, the RLP makes clear that the purchase option price will be evaluated at 50% of the proposed price and discounted annually, thereby minimizing any adverse impact on high-value property owners.[4]

Because the record evidence shows that GSA reasonably included a firm fixed-price purchase option in the RLP and that the agency reasonably decided to include the purchase option price in the evaluation criteria for total price, the Court will not set aside these requirements.

## 2. Section 7.03 Does Not Unduly Restrict Competition

The Court is also unpersuaded by plaintiffs' argument that Section 7.03 is unduly restrictive on competition.  Pl. Mot. at 21.  The Competition in Contracting Act requires that government agencies create specifications that solicit proposals in a manner that promotes fair and open competition.  *Am. Safety Council v. United States*, 122 Fed. Cl. 426, 435 (2015).  But, agencies may include restrictive requirements in a solicitation to the extent they are necessary to satisfy the agency's legitimate needs.  *Id.*  Plaintiffs have not met their burden to show that the RLP's purchase option requirement "is so plainly unjustified as to lack a rational basis" for several reasons.  *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1286-87 (Fed. Cir. 2010).

---

[4] Plaintiffs' argument that GSA's deficiency letter regarding their initial offer, dated December 20, 2018, shows that the RLP's purchase option requirement requires that offerors predict future fair market value is also misguided.  Pl. Resp. at 10.  GSA states in this letter that plaintiffs' purchase prices were [***].  AR Tab 54 at 1475.  But, a careful reading of this letter, and the applicable regulations, make clear that GSA's reference to plaintiffs' prices being [***] pertains to a comparison of plaintiffs' proposed prices with the purchase option prices proposed by other offerors, and not to fair market value, as plaintiffs suggest.  *Id.*; Def. Reply at 8; *see also* 48 C.F.R. § 15.403-1(c)(1).

First, as discussed above, the government has shown that Section 7.03 addresses GSA's legitimate need to meet the government's long-term housing needs, including the ability to purchase the SEC's new headquarters if funding becomes available in the future.  Def. Mot. at 34-35.  Second, the administrative record also shows that the government's ability to assign the purchase option requirement and to cancel other tenancies at the property are rationally related to meeting these needs.  AR Tab 1 at 16; AR Tab 2 at 29.

In this regard, Section 7.03 provides that:

> The Government shall have, at no additional cost, the freely and fully assignable option to purchase the Property . . . at the expiration of the initial Lease Term and at the expiration of the Renewal Term . . . .

AR Tab 48 at 563 (emphasis removed).  Section 7.03 also provides that:

> Any leases other than to the Government or its assignee, if applicable, should be cancelable as of the date of transfer.  In the event that any leases terminate after transfer, the Government reserves the right to negotiate an adjustment to the purchase price based on remaining terms, including any renewal periods of the leases.

*Id.* at 564.  The government explains that GSA's ability to assign the purchase option under the terms of the RLP "serves as a fallback in the event the Government does not or cannot exercise the purchase options."  Def. Reply at 10.  The government also explains that the lease cancelability requirement is necessary so that the government may avoid having to "absorb third-party leases when [the government purchases] the facility."  Def. Mot. at 29; Def. Reply at 11.  And so, the government has articulated a rational basis for including these two requirements in the RLP.

Plaintiffs' claim that the RLP's assignment requirement is unreasonable is similarly unsubstantiated by the record evidence.  Pl. Mot. at 28-31.  The government explains that the right to freely assign the purchase option will allow the government to realize the value of its use of the property, if the government is unable to secure funding to purchase the property or the location of the property no longer serves its needs.  Def. Mot. at 31-32; AR Tab 1 at 16.  The government also explains that the right to assign the purchase option would allow GSA to sell the purchase option to a developer, who could in turn lease the property to the government, or construct a new government facility in exchange.  Def. Mot. at 31-32; AR Tab 2 at 29.  And so,

plaintiffs simply have not shown that the RLP's requirement that the government be able to freely assign the purchase option is unreasonable.

The government's legitimate need to cancel leases as of the date that the property is transferred is also well documented in the administrative record.  AR Tab 1 at 16; AR Tab 2 at 29.  For example, the administrative record shows that the ability to cancel leases is necessary to ensure that the government, or its assignee, may occupy the entire building after exercising the purchase option.  AR Tab 1 at 20.  The administrative record also shows that this requirement will help the government avoid incurring the additional costs associated with holdover tenants.  AR Tab 2 at 29.  And so, the Court agrees with the government that these requirements are closely aligned with the overall purpose of the RLP—to ensure that the government has suitable housing for the SEC's new headquarters for the next several decades.  AR Tab 1 at 8-9.

### 3. Section 7.03 Does Not Irrationally Interfere With Third-Party Leasing Activities

Plaintiffs' claim that the RLP's requirement that third-party tenancies be terminated if the government, or its assignee, purchases the property is irrational is also unsubstantiated by the record evidence.  Pl. Mot. at 25-27.

Plaintiffs argue that this requirement would diminish the value of their leasehold interests.  *Id.*  But, the government explains that the ability to terminate other leases at the property will help GSA address holdover tenants if the government, or its assignee, ultimately purchases the property.  Def. Mot. at 29; AR Tab 1 at 20.  The government also explains that this requirement is rationally related to meeting the government's legitimate housing needs, because the presence of holdover tenants impedes the government's ability to expand the use of the property and could also pose security risks.  Def. Mot. at 29; AR Tab 2 at 29.  And so, the government has shown that the RLP's lease cancellation requirement is rationally related to GSA's legitimate needs.  AR Tab 1 at 20; AR Tab 2 at 29.

Plaintiffs' objection to the RLP's requirement that the government may renegotiate and adjust the purchase price for the property if there are holdover tenants also appears to be misplaced.  Pl. Resp. at 18.  The government explains that allowing GSA to renegotiate the purchase price for the property in the event of holdover tenants reasonably shields the

government from incurring additional costs associated with managing holdover tenants.  AR Tab 1 at 20; AR Tab 2 at 29.

Plaintiffs' argument that the lease cancelability requirement in the RLP irrationally interferes with the property owner's ability to secure long-term tenants is also unpersuasive.  Pl. Mot. at 25-26.  While plaintiffs correctly observe that the RLP precludes any tenancies at the property that extend beyond the conclusion of the lease term, the option to purchase the property only arises 15 and 25 years after the lease for the SEC's new headquarters has been executed. AR Tab 48 at 563.  And so, the Court does not read the RLP to foreclose the possibility that plaintiffs could enter into long-term leases with non-government tenants for a period of time that falls within the parameters of the initial and renewal terms of the lease for the new SEC headquarters.

### 4.  GSA's Application Of ABOA Square Footage To The Purchase Option Is Not Arbitrary And Capricious

Plaintiffs' claim that the evaluation process under the RLP unreasonably evaluates the purchase option based upon an ABOA SF basis is equally unavailing.  Pl. Mot. at 28-31.  The RLP provides in Section 4.09(C)(7)(h) that "[b]oth purchase options will be evaluated, only for ABOA SF leased by the Government, at 50% of its offered price, in the year of purchase . . . discounted annually at 5%."  AR Tab 48 at 514.  The government advances several sound arguments to show that this evaluation methodology is reasonable.

First, as discussed above, the government explains that the RLP's evaluation methodology appropriately discourages offerors from submitting inflated purchase option prices. Def. Reply at 13; AR Tab 1 at 14.  In this regard, the government explains that including the purchase option pricing in the net present value determination discourages higher prices, because a higher purchase price will increase an offeror's overall price for this lowest-price technically-acceptable procurement.  Def. Reply at 13; AR Tab 1 at 14; AR Tab 48 at 512, 514; *see also* AR Tab 47 at 487 (discussing the effects of the purchase option under different evaluation models). The RLP also makes clear that the evaluation of price will be based upon "the actual square footage the Government will occupy under the lease," regardless of the total size of the building. AR Tab 1 at 15.  And so, the government argues with persuasion that the RLP's evaluation methodology helps to equalize the price evaluation provided under the RLP for large and small

buildings.  Def. Mot. at 33.  Given this, plaintiffs have not shown that the RLP's requirement to apply the ABOA SF to the purchase option is unreasonable.

### 5.    Section 7.03 Does Not Violate GSAR § 570.306(b)

Plaintiffs also have not shown that the RLP's purchase option requirement violates GSAR § 570.306(b).  GSAR § 570.306(b) addresses the evaluation of contract price and requires, among other things, that GSA's contracting officer "[e]valuate prices and document the lease file to demonstrate that the proposed contract price is fair and reasonable."  48 C.F.R. § 570.306(b).  Plaintiffs argue that Section 7.03 violates this regulation because the purchase option pricing under the RLP is speculative and prevents the contracting officer from determining whether the overall lease price is fair and reasonable.  Pl. Mot. at 32-35.  But, as discussed above, the government has shown that the purchase option pricing under the RLP is not speculative or based upon future fair market value.  The government also persuasively argues that Section 570.306(b) is not applicable to this case, because this regulation does not require that GSA determine whether the purchase option pricing is fair and reasonable prior to the award of the subject lease.  Def. Mot. 37-38; Def. Reply at 16-17.  Given this, plaintiffs have not shown that the purchase option requirement in the RLP violates GSAR § 570.306(b).[5]

At bottom, the various objections that plaintiffs raise with respect to the purchase option requirement contained in the RLP fail to show that this requirement lacks a rational basis, is contrary to law, or is unduly restrictive of competition.  *See* Pl. Mot. at 12-35.  The government has also shown that the RLP's purchase option requirement will help meet the government's legitimate long-term housing needs.  *See* Def. Mot. at 14-38.  And so, the Court will not set aside this requirement.

### C.    Plaintiffs Have Not Shown That They Are Entitled To Injunctive Relief

As a final matter, plaintiffs have not shown that they are entitled to the injunctive relief that they seek in this case.  Plaintiffs request that, among other things, the Court enjoin GSA from making an award under the RLP unless GSA deletes or revises the purchase option

---

[5] The Court observes that, even if plaintiffs could show that GSA violated GSAR § 570.306(b), they have not shown how such a violation clearly prejudices them in this case.  Pl. Mot. at 32-35; Pl. Resp. at 23-27; *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004).

requirement contained in Section 7.03 of the RLP.  Compl. at Prayer for Relief.  But, a plaintiff who cannot demonstrate actual success upon the merits cannot prevail on a motion for permanent injunctive relief.  *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004).  As discussed above, plaintiffs have not succeeded upon the merits of any of their claims challenging the RLP's purchase option requirement.  And so, the Court **DENIES** plaintiffs' request for a permanent injunctive relief.

## V.    CONCLUSION

In sum, plaintiffs have not shown that it is necessary to supplement the administrative record with the Declaration of Collins Ege.  Plaintiffs also have not shown that the purchase option requirement contained in Section 7.03 of the RLP is unreasonable, unduly restrictive of competition, or contrary to law.  Rather, the government has demonstrated that GSA had a rational basis for including this requirement in the RLP.

And so, for the foregoing reasons, the Court:

1. **DENIES** plaintiffs' motion to supplement the administrative record;

2. **DENIES** plaintiffs' motion for judgment upon the administrative record;

3. **GRANTS** the government's cross-motion for judgment upon the administrative record; and

4. **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on April 2, 2019.  This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.  The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed

redaction on or before **August 12, 2019**.

**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge